**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hovig MARKARIAN, Defendant–**
**Appellant.**

**No. 91–1771.**

United States Court of Appeals,
Sixth Circuit.

Argued March 26, 1992.

Decided June 24, 1992.

Rehearing and Rehearing En Banc
Denied Sept. 14, 1992.

more than 100 grams of heroin, in violation of 21 U.S.C. § 846. He was sentenced to 188 months' imprisonment. The prosecution proved that Matsag Hartounian, an accomplice turned informant, delivered heroin several times to Markarian in Detroit. The heroin was sent to Markarian by Hagop Hagopian in Los Angeles.

Markarian presents this court with several assignments of error. Markarian first contends that, for several reasons, the district court erred in allowing portions of the testimony of a prosecution rebuttal witness, Rebecca Sobczack. Markarian also claims that the trial court erred in failing to appoint a translator, sua sponte, for the testimony of Matsag Hartounian. Finally, Markarian challenges various aspects of his sentencing. For the reasons that follow, we affirm Markarian's conviction and his sentence.

## I

The government's case against Markarian centered on the testimony of Matsag Hartounian. Hartounian testified to a heroin conspiracy operating in the Middle East, Los Angeles, and Detroit. Hartounian met Markarian for the first time in Detroit in February 1987, in a meeting arranged by Abraham Hartounian, Matsag's brother, and Hagop Hagopian, a Los Angeles heroin dealer. After this first meeting, Matsag was asked to bring a package containing approximately $80,000 from Detroit to Los Angeles.

In April 1987, Matsag Hartounian took a package containing heroin from Hagopian in Los Angeles to Markarian in Detroit. He stayed at the Star Motel, and a hotel receipt corroborated his stay. Hartounian contacted Markarian when he arrived in Detroit and gave the package containing heroin to an individual sent by Markarian. Evidence showed that telephone calls were placed from Markarian's mobile telephone to the Star Motel in April 1987. Hartounian returned to Detroit a few days later with Hagopian and a man named Raffie Nokoudian. At that time, Hartounian carried a bag of money back to Los Angeles.

Keith Corbett, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Detroit, Mich., for plaintiff-appellee.

John R. Minock (argued and briefed), Kelley & Cramer, Ann Arbor, Mich., for defendant-appellant.

Before: NELSON and BOGGS, Circuit Judges, and WELLFORD, Senior Circuit Judge.

BOGGS, Circuit Judge.

Hovig Markarian was convicted of conspiracy to possess, with intent to distribute,

This trip was corroborated by an airline ticket.

Hagopian testified that he went to Detroit again on July 4, 1987, to deliver a sample of heroin to Markarian. Hagopian stayed at the Shoreham Hotel and the prosecution offered receipts to prove the stay. Markarian's mobile phone receipt shows calls to the Shoreham on that day. Hartounian testified that he delivered 2 kilos of heroin to Markarian later in July.

On September 24, 1991, Hartounian traveled to Detroit and stayed at the Star Motel. Hartounian delivered 2 kilos of heroin to Markarian. Numerous other telephone records relating to contacts between Hartounian, Hagopian, and Markarian were introduced. These records included hotel receipts, airline tickets, Markarian's mobile phone records, and records of calls made from the hotel to Markarian.

Hartounian testified for the government in exchange for assistance in obtaining a sentence reduction in an unrelated case. Markarian now argues that Hartounian's testimony raises substantial problems because Hartounian did not understand or speak English well enough to testify without an interpreter. Markarian contends that many of Hartounian's statements, especially on cross-examination, were unintelligible and alleges that Hartounian misunderstood many common English words. Neither the prosecutor nor Markarian's defense counsel requested an interpreter at trial. (Markarian has retained new counsel for this appeal.) Nor did the trial court find it necessary to obtain an interpreter sua sponte.

After the prosecution presented its case, Markarian took the stand in his own defense. Markarian was a jeweler. He acknowledged that he had met with Hartounian on several occasions. However, Markarian claims that Hartounian's trips to Detroit were for the purposes of bringing him gold provided by Hagopian at cheap prices. Markarian denied that he ever sold heroin or any other drugs.

On cross-examination, the prosecutor attempted to establish that Markarian was a compulsive gambler who had lost a large amount of money and, ultimately, his jewelry business. The prosecution's theory was that Markarian began selling heroin to support his gambling habit. During cross-examination, the prosecutor asked Markarian about his familiarity with and use of illegal narcotics and his association with others who used or sold drugs. When Markarian denied selling or using drugs and denied any association with others engaged in such activities, the prosecutor asked the defendant whether he had ever met a woman named Rebecca Sobczack, the girlfriend of a notorious Detroit bookie, Allen Hilf. The prosecutor also asked Markarian whether Hilf had ever asked him to make a necklace for Sobczack. Markarian admitted knowing Hilf, but stated that he did not know Sobczack. He further denied that Hilf had asked him to make the necklace for Sobczack.

Over objection, the prosecutor was permitted to call Sobczack as a rebuttal witness. She testified that she had met Markarian and that Hilf had asked the defendant to make a necklace for her. Sobczack was also permitted to testify, over objection, that in late 1987 or early 1988 she had been at a party in a hotel lounge. At that party, she had asked her boyfriend Hilf for cocaine, but Hilf said he did not have any. She testified that Markarian was at the party. Markarian allegedly came over to talk to Hilf, and then left the party for a while. After Markarian came back, Sobczack again asked Hilf for cocaine and he gave her a vial of the drug.

In his closing argument, the prosecutor argued that the defendant had dealt heroin in order to pay his gambling debts. Three times in closing and rebuttal argument, the prosecutor referred to Sobczack's testimony regarding the cocaine and used it to attack Markarian's denial that he was a heroin dealer.

Markarian now argues that the district court erred when it allowed the Sobczack testimony and that he is therefore entitled to a reversal of his conviction. He also contends that the district court committed reversible error when it failed to appoint an interpreter for Matsag Hartounian sua

sponte. Finally, Markarian makes several challenges to the district court's calculation of his sentence. We discuss each of these assignments of error in turn.

## II

On direct examination, Markarian denied using heroin or selling heroin or any other controlled substance. On cross-examination, the prosecution tried to link Markarian to a drug subculture and asked questions in an attempt to do so. Among other things, the prosecutor asked whether Markarian knew Sobczack, the girlfriend of notorious bookie Allen Hilf, and whether Hilf had asked Markarian to make a necklace for her. The prosecutor had information that Hilf had once asked Markarian to make a pendant with the words "Queen Bitch" on it for Sobczack.

The resolution of the issue regarding Sobczack's rebuttal testimony turns on the scope of Markarian's testimony. The relevant testimony given by Markarian on direct examination by his counsel is as follows:

Q: Mr. Hartounian testified that he brought you heroin as opposed to gold. Did you ever get heroin from Mr. Hartounian?

A: That is out of the question. No way.

Q: Do you use heroin?

A: No, sir.

Q: Do you sell heroin?

A: No, sir.

Q: Do you sell any form of controlled substance?

A: No, sir.

On cross-examination, the prosecutor first asked several questions in an attempt to establish that Markarian was a compulsive gambler who had lost a significant amount of money and ultimately his jewelry business. The prosecutor then questioned Markarian about his use of drugs and his associations with others who used or sold drugs, and specifically regarding the sweeping denials he made in his direct examination testimony:

Q: Okay. So it's your testimony, sir, that you never had any idea about anything involving heroin regarding Mr. Hartounian; is that correct?

A: None at all.

Q: And you don't know anything about drugs at all, do you?

A: What do you mean by that?

Q: Well, I mean, you don't—I think— you don't use heroin, do you?

A: No, I don't.

Q: You don't use cocaine, do you?

A: No, I don't.

Q: Well, you've never seen it?

A: No, I've never seen it.

Q: You wouldn't want to have anything to do with people who dealt in drugs, would you?

A: No, I don't.

The prosecutor then specifically asked Markarian several times whether he knew Rebecca Sobczack and Allen Hilf. Markarian admitted knowing Hilf, but denied ever meeting Sobczack. Markarian also expressly denied that Hilf asked him to make the "Queen Bitch" pendant.

After he cross-examined Markarian, the prosecutor asked the court for permission to bring in Sobczack as a rebuttal witness to impeach Markarian's testimony. Markarian had testified that he had nothing to do with drugs, had never been involved with them, and, in fact, had never even seen them. Further, he testified that he would not associate with people involved with drugs and that he did not know Ms. Sobczack. The prosecutor claimed that Sobczack would offer testimony to impeach the sweeping denials made by Markarian.

Before the court allowed the prosecution to call Sobczack, it held a hearing outside the presence of the jury. On the separate record, Sobczack testified to the events of the party at the hotel lounge as she recalled them. Both the prosecutor and defense attorneys were allowed to question Sobczack. The defense argued that the testimony should not be permitted because it was more prejudicial than probative. The judge decided that Sobczack's impeaching testimony was admissible and that it

was up to the jury to decided what weight to give the testimony.

Sobczack testified that she had known Allen Hilf since the early 1980's and had a romantic relationship with him for five or six years. She also claimed that during that time she had gotten to know Hovig Markarian, because Hilf purchased jewelry for her from Markarian on several occasions. Sobczack stated that she had been to Markarian's jewelry store "a couple of times" and identified him in the courtroom.

Then Sobczack testified to the events that occurred at the party in the lounge of the Clarion Hotel in Detroit in late 1987 or early 1988. She stated that she was seated at a table in the lounge with Hilf and a few other people. Sobczack asked Hilf for a line of cocaine and he told her that he did not have any. A short time later, Hovig Markarian came to the lounge and sat down with them to discuss the purchase of the "Queen Bitch" diamond pendant.

Sobczack went on to testify that at some point after the jewelry discussion, Markarian left the lounge for about forty-five minutes. When he returned, Markarian complained that he had received· a speeding ticket. After Markarian returned to the lounge, Sobczack again asked Hilf for cocaine. Hilf was then able to supply Sobczack with a vial of the drug, although no one other than Markarian had left the lounge since the first time Sobczack had asked for cocaine.

During Sobczack's testimony, the district court gave a limiting instruction to the jury regarding her testimony concerning any hearsay statements of Hilf. Sobczack had testified that Hilf first told her that he had no cocaine then, after Markarian left and returned, Hilf told her that he had some cocaine. With regard to Sobczack's testimony concerning Hilf's statements to her, the district court warned the jury that: "You've heard that statement but understand it's not—the Court is not accepting that there is any truth in that statement, it's just to show a state of mind of [Sobczack]."

The defense counsel then quite effectively cross-examined Sobczack. Among other things, Sobczack admitted that she had not actually seen Markarian leave because he had gone when she was in the bathroom, and that she had never seen Markarian actually give any cocaine to Hilf. Markarian now contends that the district court erred in admitting Sobczack's testimony with regard to the events that took place in the lounge at the Clarion Hotel.

The defendant argues that a witness may not generally be impeached with extrinsic evidence on a collateral matter. The rule prohibits contradiction of collateral matters by extrinsic evidence but permits cross-examination on collateral points which are relevant and otherwise proper. A collateral matter, then, is one that is not so irrelevant as to preclude cross-examination, but not relevant enough to permit extrinsic evidence. However, the appellant acknowledges that when a defendant makes a false sweeping denial of any previous wrongdoing, the prosecution may use extrinsic evidence to impeach the sweeping claim.

Markarian argues that in this case the impeaching evidence was totally unrelated to the charged offense. Further, Markarian claims that his testimony was not a sweeping denial. He denied that he used heroin or that he sold heroin or any other controlled substance. Markarian claims that on cross-examination, the prosecutor went far beyond this. He asked whether defendant used cocaine or whether his friends used it or sold it. He asked whether Markarian would have anything to do with someone who dealt drugs and the defendant said he would not. Then the prosecutor asked Markarian if he knew Sobczack. Markarian argues that he made no sweeping denials of wrongdoing on cross-examination and, even if he had, impeachment by extrinsic evidence should not have been allowed because the testimony concerned a collateral matter. Finally, Markarian argues that even if the court finds that the defendant made a sweeping denial on direct examination, the rebuttal evidence was clearly more prejudicial than probative under Federal Rule of Evidence 403. Markarian concludes that there was no basis for admitting the rebuttal testimo-

ny of Sobczack and that the district court's admission of it constitutes reversible error.

The government maintains, correctly, that Markarian's sweeping denial that he never sold controlled substances invited questions relating to his knowledge of drugs. Sobczack's testimony was relevant to the issue of Markarian's knowledge or intent to deal in drugs. Since Markarian made a general denial of dealing in drugs, the rebuttal testimony was proper. Such a sweeping denial is not collateral to a prosecution for participation in a heroin conspiracy. As to whether Sobczack could conclusively establish that Markarian delivered the drugs, the government contends that this is a question of weight of the evidence, not admissibility. In any event, says the government, any error here was harmless.

We review evidentiary decisions made by the district court under an abuse of discretion standard. *United States v. Walton*, 909 F.2d 915, 925 (6th Cir.1990). In this case, Markarian did make rather sweeping statements on direct examination concerning his experience with drugs that went far beyond the particular crimes charged here. He reiterated and broadened these denials on cross-examination. As such, we find that Markarian invited precisely the sort of impeachment that the district court allowed in this case. "We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences.... It is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." *United States v. Havens*, 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980).

We have consistently recognized the broad scope of allowable impeachment evidence and, more importantly perhaps, the significant discretion left to the trial court in this area. *United States v. Causey*, 834 F.2d 1277, 1282 (6th Cir.1987). For instance, in a case dealing with impeachment by prior inconsistent statements, a trial judge has considerable discretion in determining whether testimony is, in fact, inconsistent with prior statements. *Ibid.* Markarian maintains that he gave much of the testimony that allowed the impeachment on cross-examination and did not open himself up to the Sobczack testimony on direct. First, we find that the impeachment in this case was within the scope of Markarian's direct testimony. Second:

> [i]n terms of impeaching a defendant's seemingly false statements with his prior inconsistent utterances or with other reliable evidence available to the government, we see no difference of constitutional magnitude between the defendant's statements on direct examination and his answers to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination. Without this opportunity, the normal functioning of cross-examination would be severely impeded.

*Havens*, 446 U.S. at 627, 100 S.Ct. at 1916. In fact, in *Havens* the Supreme Court went as far as to allow impeachment of the defendant with illegally obtained evidence that had been ruled inadmissible as substantive evidence of guilt.

In sum, we are unable to say that the trial court abused its discretion in admitting the rebuttal testimony of Ms. Sobczack. The court determined that it was relevant impeaching evidence and that its probative value outweighed its prejudicial effect. The issue of what weight to accord the Sobczack testimony was properly left to the jury.

### III

▮ The appellate counsel for Markarian argues that a translator should have been appointed for Hartounian. At sentencing, Markarian's new counsel challenged the reliability of Hartounian's testimony because of an alleged language problem. Markarian submitted the affidavit of an expert who examined the transcript and concluded that Hartounian was not capable of testifying competently in English. Neither the prosecutor nor the original defense counsel moved for an interpreter at trial. Markarian now maintains that the court should

have appointed an interpreter on its own motion.

According to Markarian, the Court Interpreters Act, 28 U.S.C. § 1827(d), places a duty on the trial court to inquire about the need for an interpreter when a defendant or witness has difficulty with English. *Valladares v. United States*, 871 F.2d 1564 (11th Cir.1989). Markarian contends that the court should either reverse the decision of the trial court due to Hartounian's incompetent testimony or remand the case for an evidentiary hearing on the issue.

The issue of whether to appoint an interpreter is left to the sound discretion of the trial court. In this case, neither the original defense counsel, the prosecutor, nor Hartounian himself felt that an interpreter was necessary. No one made a motion for an interpreter at trial. Further, the district judge, who is himself bilingual, indicated that he pays special attention to this question and did not feel that an interpreter was required in this case. The trial judge is given wide discretion in these matters. *Id.* at 1566. The district court did not abuse its broad discretion in this case. Our independent review of the record of Hartounian's testimony satisfies us that the district court did not commit plain error in failing to appoint an interpreter sua sponte.

## IV

Finally, Markarian raises several sentencing issues. First, Markarian contends that he must be resentenced because this is a pre-guidelines case and the guidelines should not have been applied. Second, Markarian claims that the trial court erred in adjusting his offense level upward two levels because it determined that he played an organizing or leadership role in this offense. Lastly, Markarian argues that the issue of the amount of drugs involved should have been decided by the jury. All of Markarian's sentencing objections are without merit.

■ Markarian argues that the conspiracy in this case did not extend beyond November 1, 1987 and, therefore, the guidelines do not apply. Markarian contends that the government has not shown that anything was done in furtherance of the conspiracy after the date on which the Guidelines became effective. This argument rests on the proposition that Hartounian's trips to Detroit in November 1987 for the purpose of collecting money for the heroin delivered in October 1987 were not part of the conspiracy. Both November trips were unsuccessful attempts to collect the money for the drugs.

It is clear that under general conspiracy law the two trips to collect drug money were acts in furtherance of the conspiracy. The defendant, then, was involved in a continuing offense that straddled the effective date of the guidelines. Markarian can, therefore, be sentenced under the guidelines without violating the Ex Post Facto clause. *United States v. Edgecomb*, 910 F.2d 1309 (6th Cir.1990).

■ Next, Markarian's offense level was adjusted upward two levels because the trial court determined that he played an organizing or leadership role in the conspiracy. This was based on Hartounian's testimony that persons other than the defendant actually picked up the heroin at the Detroit area motels. Markarian now argues that it was not clear that he exercised any leadership over those who picked up the heroin at the motels. However, the court's findings of fact under the guidelines are subject to reversal only if clearly erroneous. *United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.1989). This standard applies to the district court's determination that the defendant played a supervisory role in this offense. *United States v. Williams*, 894 F.2d 208 (6th Cir.1990). A sentencing court need only be satisfied by a preponderance of the evidence that the applicable sentencing factors are present. *United States v. Carroll*, 893 F.2d 1502 (6th Cir.1990). The district court's findings with regard to this matter were not clearly erroneous.

■ Finally, the district court determined that Markarian's proper offense level was 34, based on involvement in sales of at least three kilograms of heroin, but less than ten kilograms of heroin. Hartounian testified that he had delivered what he was told were multi-kilogram amounts of heroin to Markarian. The presentence report at-

tributed 7.5 kilos of heroin to Markarian, and the district court decided that a preponderance of the evidence established that this was the amount involved. The defendant, recognizing that prior cases in this Circuit hold otherwise, maintains that the amount of heroin involved should be a jury issue, not a mere sentencing consideration. Markarian contends that while trial counsel did not object, failure to submit this issue to the jury was plain error. However, we find no merit in Markarian's arguments and affirm the findings of the district court. *United States v. Moreno,* 899 F.2d 465 (6th Cir.1990).

## V

For the reasons given, we AFFIRM the judgment of the district court in all respects. Markarian also makes conclusory allegations that he was denied the effective assistance of counsel at trial. The proper vehicle for any ineffective assistance of counsel claim by Markarian is a proceeding under 28 U.S.C. § 2255. *United States v. Hill,* 688 F.2d 18, 21 (6th Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982).