**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0928n.06
Filed: December 22, 2006

**05-4427**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAMON SOLANO RODRIGUEZ, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and GIBBONS, Circuit Judges, and EDMUNDS,[*] District Judge.

PER CURIAM. The defendant, Ramon Rodriguez, appeals the district court's denial of his motion for acquittal with regard to Counts 1 and 3 of his conviction on five counts of an indictment charging him with conspiracy to distribute cocaine, maintenance of a "crack house," and possession with intent to distribute cocaine, cocaine base, and marijuana. The defendant contends that the evidence at trial was insufficient to establish both (1) the existence of a conspiracy and his participation in it and (2) his constructive possession of the cocaine base. The defendant also argues for the first time on appeal that the trial court violated the Court Interpreters Act by not adequately assessing whether

_____

[*]The Hon. Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

the defendant needed the assistance of an interpreter and asks that this court remand for a more thorough examination of whether an interpreter was needed.

2.    In ruling on the defendant's motion under Federal Rule of Criminal Procedure 29, the district court applied the correct standard for determining whether the evidence was legally sufficient to support the convictions for conspiracy and for possession of a controlled substance with the intent to distribute and carefully analyzed the proof submitted to the jury.

3.    On the latter charge, the court held that the defendant "had sufficient control, intent to control, and access to the cocaine, cocaine base, and marijuana [found by police in a search of his residence] to support a finding of constructive possession." This conclusion was based on proof that "Defendant's name was on the lease [of the residence] and that the narcotics and packaging materials were both in plain view and intermingled with Defendant's personal papers, such as his immigration packet." The district court also noted that Rodriguez "had easy access to the house, including the detached garage where over 5 grams of cocaine base was found, and the police observed Defendant leaving [the house] minutes before the search warrant's execution." In addition, the court said, intent to distribute could be found based on "evidence of the large quantities of each type of drug and the related packaging materials found in [the house]." As the district court noted, the jury obviously disbelieved the defendant's testimony that he had been out of the country during most of the period preceding the search of the residence and did not know that the

contraband was in the residence – a credibility determination that cannot be reviewed on appeal.

4.      As for the conspiracy conviction, the district court held that the government had succeeded in proving the existence of a conspiracy from proof of sale to a third party, effectuated by a self-proclaimed courier named Valente Mendoza, who testified at trial. The proof of the defendant's participation in the conspiracy, although circumstantial, was accurately described by the district court as "abundan[t]." It included proof of "his payment of $6,000 in rent, up front . . ., Defendant's paperwork intermingled with the drugs and packaging materials found at the house, his presence at the residence the day after Mendoza picked up three kilograms of cocaine, and the drugs and packaging materials in plain view when Defendant left the residence" just before the search warrant was executed.

5.      The district court correctly acknowledged that mere presence at the scene of an offense or mere association with the offenders is insufficient to convict, citing United States v. Pearce, 912 F.2d 159, 162 (6th Cir. 1990). But, as the court also noted, "[t]here is a point . . . at which the circumstantial evidence amounts to more than a showing of mere association and supports a finding [of] a conspiracy." There was no error in the district court's determination that the circumstantial evidence in this case was, in fact, legally sufficient in that respect.

6.      Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in denying

the defendant's Rule 29 motion. As to the remaining issue on appeal, we conclude that the defendant's complaint about the district court's procedure under the Court Interpreters Act, 28 U.S.C. § 1827, is equally unavailing.

7.      The defendant argues that "the trial court realized mid-trial that Mr. Rodriguez . . . . may have had difficulty understanding what was transpiring at trial" and therefore made an inquiry on the record into Rodriguez's understanding of the trial up to that point – but one that was inadequate under the Act. However, the record establishes that this argument seriously misconstrues both the facts surrounding the district court's inquiry into Rodriguez's understanding of the proceedings and the requirements of the Act.

8.      The Court Interpreters Act, 28 U.S.C. § 1827, provides in relevant part:

9.      The presiding judicial officer . . . shall utilize the services of [an interpreter] . . . if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness'[s] comprehension of questions and the presentation of such testimony.

10.     28 U.S.C. § 1827(d)(1). The statute also provides that a defendant may waive interpretation in whole or in part, but that such waiver must be made expressly by the defendant on the record "after the presiding judicial officer has explained to such individual . . . the nature and effect of the waiver." 28 U.S.C. § 1827(f)(1).

11.      Because the defendant did not request the use of an interpreter either before or during trial, up until the point at which he himself testified, we review the district court's failure to *sua sponte* provide an interpreter for plain error. See United States v. Markarian, 967 F.2d 1098, 1104 (6th Cir. 1992) (reviewing for plain error). The inquiry must focus on whether the purposes of the Court Interpreters Act were met, *i.e.*, "to ensure that a party has comprehension of the proceedings and to provide the means to communicate effectively with counsel." United States v. Sanchez, 928 F.2d 1450, 1455 (6th Cir. 1991), *abrogated on other grounds by* United States v. Jackson-Randolph, 282 F.3d 369 (6th Cir. 2002). The "ultimate determination" is whether failure to provide an interpreter "made the trial fundamentally unfair." Id. (quotations and citations omitted). Finally, "as long as the purposes of the Act have been met, the appropriate use of interpreters in the courtroom is a matter within the sound discretion of the district court." Id.

12.      Despite the defendant's argument to the contrary, the district court judge did not "realize[ ] mid-trial" that there was a question regarding the defendant's understanding of the proceedings. Instead, the record shows that after the prosecution rested its case, defense counsel requested that an interpreter be utilized when Rodriguez took the stand because counsel thought that his client's spoken English might not be fully understood by the judge and jury. In response, the government requested that something be put on the record regarding Rodriguez's understanding of the proceedings up to that point, undoubtedly so that the very issue argued here would not arise. The court asked for defense counsel's response to the government's request, and defense counsel indicated

in no uncertain terms that there had not been any problem with Rodriguez's understanding

of the proceedings:

13. I guess, your Honor, the only thing I would say is I have met with Mr. Rodriguez on a multitude of occasions, I have spoken to him both in English and in Spanish. He has not expressed any concern with any difficulty that one could perceive he may have with the English language. He's been able to understand also when we have been before your Honor previously, I believe for the arraignment, we did discuss with Mr. Rodriguez the proceedings, he clearly understood your Honor. I have no doubt that he understands the testimony, what's happening.

14. The only reason for requesting or for having lined up an interpreter prior to trial was because I was actually more concerned with your Honor and [the government attorney] in that during Mr. Rodriguez's testimony, if he would have testified, which we anticipate he will, there may have been some difficulty in understanding certain things that he may say. Although I understand him, it is somewhat broken.

15. Really it was more to facilitate the testimony, not necessarily because there's an issue with understanding or comprehension. So I feel comfortable he has understood, he knows why he's here, he has understood the testimony.

16. Also, and I apologize for drawing this out, I just want to make sure that there is no [sic] concerns. I met with him again last night regarding what witnesses have testified to, the purpose of the Rule 29 motion, and there is no question he's understood everything to this moment in time.

17. The judge acceded to the government's request to put something on the record

establishing the defendant's understanding only out of "an abundance of caution."

Moreover, the judge's on-the-record colloquy with the defendant affirmed what his counsel

had represented to the court:

18. THE COURT: At a sidebar during yesterday's proceedings, counsel for the defense... indicated that in the event that you decided to testify in this proceeding, he would need an interpreter. He did not say that you did not

understand the proceedings or what had happened earlier in this trial, he didn't say that you did not understand any aspect of the proceeding. But in an abundance of caution, the Court wants to confirm on the record that you have understood the proceedings thus far and that you understand the proceedings now and sort of on a going-forward basis. There was only one interpreter for one witness during the trial and I wanted to make sure, first of all, that you understand English, Mr. Rodriguez.

THE DEFENDANT: Yes, I understand.

THE COURT: Have you understood all of your proceedings in which you have been involved thus far?

THE DEFENDANT: Yes.

THE COURT: Have you understood the testimony that has come from the witness stand?

THE DEFENDANT: Yes.

THE COURT: And have you understood every other aspect of this trial?

THE DEFENDANT: Yes.

THE COURT: That confirms what your counsel has indicated to us, but we wanted to be clear on the record that you understood everything that had proceeded thus far.

Additionally, at the government's request and with the assent of the defense, the district court judge also took the precaution of explaining to the jury why the defendant was using an interpreter for his testimony but not throughout the rest of trial.

This record shows that the district court never received any indication, either from his own observations, from defense counsel, or from the defendant himself, that the defendant needed an interpreter at any point other than during his own testimony. On the contrary, every indication was that the defendant understood English and needed an interpreter only for the limited purpose of making himself clearly understood by the jury.

Given this record, we find no violation of the Court Interpreters Act. The court's duty to provide an interpreter arises only "if the presiding judicial officer determines" that the defendant primarily speaks a language other than English such that his comprehension of the proceedings or communication with counsel or the court is inhibited. 28 U.S.C. § 1827(d)(1). Therefore, under the plain language of the statute, the court's duty to provide an interpreter was simply never triggered.

The defendant also contends that his responses to the district court's questioning were inadequate to constitute a waiver under the statute because the court did not explicitly inform him that he had a right to an interpreter or ask whether he was choosing to waive it. See 28 U.S.C. § 1827(f)(1) (requiring the presiding judicial officer to explain the "nature and effect" of a waiver). This argument fails, however, because section (f)(1) was never triggered in this case. The court's colloquy with both counsel and the defendant established that the defendant did not need an interpreter and, therefore, there was simply no need for a waiver. See United States v. Perez, 918 F.2d 488, 491 (5th Cir. 1990) (holding that when there is no finding that an interpreter is necessary, there is "no right to an interpreter to waive").

**CONCLUSION**

For the reasons set out above, we find no reversible error and AFFIRM the judgment of the district court.