*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0375p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                 *Plaintiff-Appellee,*

     *v.*

BRANDON TAYLOR,
                *Defendant-Appellant.*

No. 09-1086

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-20122-001—David M. Lawson, District Judge.

Decided and Filed: October 26, 2010[*]

Before: GIBBONS and COOK, Circuit Judges; VAN TATENHOVE, District
Judge.[**]

_____

**COUNSEL**

**ON BRIEF:** Joseph A. Niskar, BRANDON TAYLOR, Detroit, Michigan, for
Appellant. Terrence R. Haugabook, ASSISTANT UNITED STATES ATTORNEY,
Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

VAN TATENHOVE, District Judge. Brandon Taylor pleaded guilty, without the
benefit of a plea agreement, to multiple counts of carjacking, brandishing a firearm
during a crime of violence, and robbery of United States property. On appeal, Taylor
contends that because he lacked the requisite intent to commit carjacking, the district

---

[*] This decision was originally issued as an "unpublished decision" filed on October 26, 2010. On
November 24, 2010, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

1

court violated Fed. R. Crim. P. 11(b)(3) by failing to ensure that a sufficient factual basis for the offenses existed. We find that the district court established a satisfactory factual basis for Taylor's pleas and affirm.

# I.

Taylor and his co-defendant, Shawnta Jones, devised a carjacking scheme in which they would target unaccompanied females at various financial institutions and businesses. After observing the women at banks, ATM's, or check cashing stores, Taylor and Jones followed them to their homes or other final destinations. Taylor then approached the women as they exited their vehicles, brandishing a gun or at least indicating that he was armed. He forced the victims back into their cars and either ordered them to drive him to an ATM to withdraw money or simply robbed them of their property. With Jones following nearby, Taylor then forced the victims to surrender their vehicles. Typically, he ditched the cars a short distance away where he would reunite with Jones. One of Taylor's victims was a Justice Department employee. When he robbed her, Taylor stole a United States government-issued MasterCard that had been issued to the Department of Justice.

The Second Superseding Indictment charged Taylor and Jones together as aiders and abettors for their respective roles in these crimes. In addition to the two counts of aiding and abetting the carjackings, Taylor was charged with aiding and abetting the use of a firearm during and in relation to a crime of violence, aiding and abetting the robbery of property of the United States, and four separate counts of carjacking.

The first plea hearing was scheduled on August 11, 2008. At that hearing, the district court confirmed that Taylor wished to plead guilty and then advised him of his constitutional rights, including his right to remain silent. The court engaged in a colloquy with Taylor and established the Defendant's competency. Taylor advised the court that he had received a copy of the indictment, discussed it with his attorney, and indicated that his attorney explained all of the charges and what the Government would have to prove in order to convict him. In response to the court's questions, Taylor

denied that his plea was a result of any coercion or threats and instead stated that he was pleading guilty freely and voluntarily.

During the discussion about the maximum possible penalties, however, the Assistant United States Attorney (AUSA) and the district court disagreed about the appropriate penalty for the 18 U.S.C. § 924(c)(1)(A)(i) charge in Count Two of the indictment. The Government argued that Taylor faced a consecutive seven-year term because he brandished the firearm during one of the carjackings. The district court disagreed and advised Taylor that he faced only a five-year consecutive sentence because the indictment charged the use and carrying of a firearm rather than brandishing. As they were about to discuss the elements of the crimes, the Government requested a sidebar where the court and the AUSA continued to debate the appropriate penalty for the gun charge. The parties ultimately agreed that the hearing should be continued in order to resolve this issue.

At that point, however, defense counsel advised the court that "[t]here was another hurdle that was going to show up." Counsel then noted that his client was not going to be able to satisfy the intent element of the carjacking statute which required him to intend to cause serious bodily injury or death. After another brief discussion, the parties again agreed that a continuance was necessary. The court, back on the record, noted the disagreement about the penalty for the § 924(c) charge and directed the parties to brief that issue. The district court also described "some sort of hiccup with respect to the factual basis" for the carjacking offenses, "as to whether or not the intent element can be made out by what you anticipate your client to be ready to admit to." The court then advised defense counsel that "there might be some reason for you to have a discussion with your client about that and decide whether you want to persist in the plea." In conclusion, the court stated that they would continue the hearing to a different date and then determine if Taylor still wanted to plead guilty.

The parties reconvened on August 25 for the second plea hearing. The district court discussed *United States v. Thompson*, 515 F.3d 556 (6th Cir. 2008) and concluded that, contrary to the court's original position, the brandishing issue was a sentencing

factor and not an element of the crime. The court indicated that it would proceed in a manner consistent with *Thompson* and was ready to move on with Taylor's plea hearing. Defense counsel, however, stated that "my client desires to plea, but my client cannot say that he brandished the gun or intended to do great bodily harm or murder."

The district court then noted the elements of carjacking, including the intent to cause death or serious bodily harm. Following up with Taylor's counsel, the district court asked, "but I read the intent element as requiring an admission to facts from which the Court can infer intent to cause death or serious bodily harm, and you are telling me that your client not only would not admit those facts, but in fact, he would deny them, is that correct?" Defense counsel responded that Taylor "would deny them." After some further discussion, the parties essentially agreed that Taylor would be unable to satisfy the intent element of the statute. Defense counsel therefore requested a brief continuance. The district court granted that request and stated that "[i]f we can't resolve it without trial, we will set a trial date."

The third installment of Taylor's plea hearing occurred on September 2, 2008. The district court summarized the procedural posture, noting the prior continuances and the question about whether Taylor could a establish a factual basis for the carjacking charges. The court then asked defense counsel about the status of the case, to which counsel replied, "[m]y client informs me that he desires to plead to those counts." Asked if that was correct, Taylor responded in the affirmative.

The district court confirmed that Taylor was not under the influence of any drugs or alcohol, reiterated the maximum penalties, and discussed the applicable term of supervised release as well as the special assessment. Taylor again admitted that he was pleading guilty freely and voluntarily because he was in fact guilty of the crimes to which he was pleading. Pursuant to Rule 11(b)(1)(G), the district court informed Taylor of the nature of the carjacking charges:

> The charges of carjacking under Section 2119, Subparagraph 1 of Title 18, are contained in Counts 1, 3, 6, 8 and 9. The elements are as follows: First of all, that on or about the date charged in the indictment you unlawfully took a certain motor vehicle. Secondly, that the motor

vehicle was taken from the person or presence of another person and against that person's will. *Third, at the time the motor vehicle was unlawfully taken you intended to cause death or serious bodily harm.* And fourth, that the motor vehicle was taken by the wrongful use of force and violence or by intimidation or attempts to use force and violence or intimidation. Those are the elements of the crimes in those counts I just mentioned to you.[1]

Taylor indicated that he understood these elements as well as the elements of the other crimes and again stated that he wished to plead guilty to the charges.

Next, the district court asked Taylor a series of questions about each count in order to establish the factual bases for his pleas. Regarding the first carjacking count, Taylor's exchange with the court was as follows:

THE COURT: All right. Now on January 3, 2008, did you follow a woman from a Comerica Bank ATM on Grand River and Outer Drive Street in Detroit to her home in Southfield?

DEFENDANT: Yes.

THE COURT: And at that point did you confront the woman and threaten her with a gun?

DEFENDANT: Yes.

THE COURT: And did you steal her car?

DEFENDANT: Yes.

THE COURT: And did you force her into the car with you?

DEFENDANT: Yes.

THE COURT: And then did you take it to a different location and rob her of her property?

DEFENDANT: Yes.

THE COURT: Then what did you do, did you abandon the car and have Ms. Jones pick you up and take you away from there?

DEFENDANT: Yes.

---

[1] After a reminder from the United States, the court added that the vehicle must have been transported, shipped, or received in interstate commerce.

THE COURT:  At the time that you robbed this individual, you did have a firearm, is that correct?

DEFENDANT:  Yes.

THE COURT:  And did you brandish it; that is, show it to her[?]**2**

DEFENDANT:  Yes.

THE COURT:  Was she able to see it?

DEFENDANT:  Yes.

THE COURT:  Did you threaten her, her safety?

DEFENDANT:  Yes.

THE COURT:  All right.  Did she have reason to believe that she might die or be subject to serious injury?

DEFENDANT:  Yes.

THE COURT:  And it was – was it your intent to put her in that frame of mind?

DEFENDANT:  Yes.

After posing similar, but not identical, questions regarding the factual bases of the other counts, the court asked Taylor whether it was his "intent to do all of these things as charged in the – in all of the counts of the indictment."  Taylor responded, "Yes."

Neither party objected to any portion of these exchanges.  Following each count, the district court specifically asked the AUSA if he agreed that a sufficient factual basis had been established.  And each time, the Government agreed.**3**  At the conclusion of the hearing, both defense counsel and the AUSA affirmatively agreed that the district court properly complied with all of the applicable provisions of Fed. R. Crim. P. 11.  The district court, therefore, accepted Taylor's plea, adjudged him guilty of those offenses, and subsequently sentenced him to a total of 204 months in prison.

---

**2**The parties agreed that the factual basis for Count Two (use and carrying of a firearm during and in relation to a crime of violence) was satisfied by the plea colloquy on this count.

**3**With regard to several counts, the AUSA asked the district court to confirm that Taylor stipulated to the interstate transportation of the vehicles which were taken.  The court complied with these requests, and Taylor so stipulated each time.

**II.**

The gravamen of Taylor's appeal concerns the factual basis for his guilty plea to multiple counts of carjacking, in violation of 18 U.S.C. § 2119. He contends that the facts adduced during the plea hearing were insufficient to establish a factual basis for the carjacking offenses. Specifically, Taylor argues that he did not possess the requisite intent to cause death or bodily harm. The district court's failure to comply with Fed. R. Crim. P. 11(b)(3), according to Taylor, requires reversal of his convictions. Without a sufficient factual basis for the carjacking counts, Taylor maintains that his conviction for carrying and using a gun during a crime of violence must also be reversed.[4]

Generally, a guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant. *Brady v. United States*, 397 U.S. 742, 748 (1970). Rule 11 of the Federal Rules of Criminal Procedure governs plea hearings and "requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005). The court's duty to ensure the existence of a factual basis is described in Rule 11(b)(3), which directs that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3).

Taylor suggests that we should review the district court's alleged noncompliance with Rule 11 under the *de novo* standard. But his failure to object at the plea hearing means that we review only for plain error. *United States v. Vonn*, 535 U.S. 55, 66 (2002) ("A defendant's right to review of error he let pass in silence depends upon the plain error rule . . . ."); *see also United States v. Page*, 520 F.3d 545, 546-47 (6th Cir. 2008); *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). We have held that a district court commits plain error when it violates Rule 11(b)(3). *United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007).

---

[4]Taylor does not challenge his conviction for robbery of property of the United States, in violation of 18 U.S.C. § 2114(a).

In this case, the district court did not violate Rule 11(b)(3) and therefore did not commit error, plain or otherwise.  At the final plea hearing, the district court detailed each count of the second superseding indictment as well as the respective penalties for those charges.  The court also correctly described the essential elements of all of the offenses, and Taylor indicated that he understood them.  Regarding the carjacking counts, the district court advised Taylor that to obtain a conviction for carjacking, the Government must prove that the defendant: (1) *with intent to cause death or serious bodily harm*, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another, (5) by force and violence or intimidation.  18 U.S.C. § 2119; *see also United States v. Adams*, 265 F.3d 420, 423-24 (6th Cir. 2001).

Near the end of the hearing, the court asked Taylor if it was his "intent to do all of these things as charged in the – in all of the counts of the indictment."  Taylor responded in the affirmative.  His response amounts to an admission to all of the charges and supporting facts contained in the indictment.  And we have noted that "where the crime is easily understood . . . a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11."  *Lalonde*, 509 F.3d at 762 (alteration in original) (internal quotation marks and citation omitted).  Although Taylor was charged with multiple counts, the crimes were easily understood and not complex.  The indictment was detailed and specific, and Taylor's response was unequivocal.  Under these facts, we find Taylor's admission to all of the conduct charged in the indictment sufficient to establish a factual basis for his guilty pleas.

Taylor nevertheless contends that he lacked the intent to cause death or serious bodily harm during the carjackings.  And it is this specific intent element that Taylor claims was unsupported by the facts.  As this court has noted, the only direct evidence of a defendant's mental state "would be the defendant's own statements as to what he was thinking."  *United States v. Tunning*, 69 F.3d 107, 113 (6th Cir. 1995).

During the plea colloquy, the district court did ask Taylor questions about his intent related to the carjackings. Those questions, however, focused on the victims' subjective beliefs about being injured or killed and whether Taylor intended to make them feel that way. For example, concerning the first carjacking count, the court asked Taylor if the victim had "reason to believe that she might die or be subject to serious injury" and whether it was his "intent to put her in that frame of mind." For the second carjacking count (Count Three), the district court inquired whether Taylor "threaten[ed] violence by putting that person in a frame of mind that she might die or be seriously injured" and then asked if the victim had "reason to believe, based on [Taylor's] actions, that that might happen to her." The court proceeded to ask similar questions for the remaining counts. But, the court never asked whether Taylor actually intended to cause death or serious bodily harm to any of the victims. This distinction is critical because although the victim's reasonable apprehension may be relevant to an assault charge, it is not an element of carjacking.[5] To satisfy the first element of that charge, Taylor must have intended to cause death or serious bodily harm.

Even if the district court's colloquy was insufficient to establish the requisite intent, and consequently an inappropriate factual basis under Rule 11, Taylor's claim fares no better. For a defendant seeking reversal of his conviction, like Taylor, plain error review requires a heightened showing of prejudice. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* A reviewing court, assessing the effect of a Rule 11 error, must look to the entire record, not to the plea proceedings alone. *Id.* at 80 (citing *Vonn*, 535 U.S. at 74-75).

---

[5]That the district court couched the intent questions in this manner appears inconsistent with the court's observations at the second plea hearing. There, the court specifically noted that "one can be in possession of a gun and not harbor that intent [to cause serious bodily harm or death]." When the Government responded that "a reasonable person in the victim's shoes would [ ] think that I'm about to die or I'm about to sustain some serious bodily harm," the court interjected, "[b]ut that's not an element of the crime."

In this case, reversal is not warranted because Taylor cannot demonstrate the heightened showing of prejudice. *See id.* at 83. He has not argued, let alone demonstrated, that but for the district court's error during the plea colloquy, he would not have pled guilty. Taylor does not even contend that he would have gone to trial under any circumstance. Absent any such argument, he simply cannot show a reasonable probability of a different outcome. And Taylor's failure to meet this burden is fatal to his claim.

Taylor naturally places considerable emphasis on his attorney's statements at the first two hearings that Taylor could not admit, and would in fact deny, that he had the requisite intent to kill or cause serious bodily harm. Although not stated expressly, the implication is that Taylor would have denied possessing such an intent at the third hearing if the district court had simply mirrored the statutory language when asking the intent questions. Regardless, even if Taylor had raised such an argument, it would not be supported by the record.

Here, the plea hearing was postponed on two separate occasions to allow Taylor an opportunity for further consultation with his lawyer. Taylor's purported inability to satisfy the intent element of the carjacking charges was discussed on the record at both hearings. At the conclusion of the first hearing, the district court even advised Taylor's attorney to discuss this issue with his client and determine whether he wanted to persist in the plea. The parties were therefore on notice that this was an issue. Indeed, it was the sole reason that the second hearing was continued.

This procedural posture not only provides important context for the third plea hearing but also supports the validity of Taylor's plea for several reasons. First, it seems unlikely that Taylor and his attorney would come back before the district court for a third time if there was any remaining doubt about Taylor's ability to admit to the essential elements of the carjacking offenses. His admission regarding the intent element was the cause of the prior continuances and was certain to be the focus of the third hearing. The presumption upon Taylor's return for the third attempt was that he had

satisfactorily discussed this issue with his counsel and was ready to admit the factual basis for all of the charges, and particularly the specific intent for the carjacking counts.

In fact, the district court, at the outset of the third hearing, tried to confirm that this issue had been resolved. After noting the two failed plea attempts, the court essentially asked Taylor's counsel where things stood. Counsel responded, "[m]y client informs me that he desires to plead guilty to [the carjacking] counts." The district court then confirmed that with Taylor himself. Again, taken in context, this exchange suggests that Taylor, following the two continuances and presumably after consulting with counsel, was now satisfied of his own guilt and ready to admit the factual basis for the intent element, as well as all others.

The record further suggests that Taylor's alleged inability to make out the factual basis may be more appropriately characterized as simply a reluctance to do so. At the first two hearings, defense counsel stated that his client could not admit, and would in fact deny, that he ever intended to kill or cause serious harm to any of the victims. At those hearings, counsel also stated that Taylor never brandished a firearm during any of the offenses. However, at the third and final plea hearing, Taylor, without any apparent hesitation or equivocation, affirmatively stated that he brandished a weapon during one of the carjackings and admitted that the victim saw the gun. Thus, despite counsel's previous express denials of this particular fact (and charge), Taylor readily acknowledged contradictory facts at the third hearing. Similarly, Taylor's decision to persist in his guilty plea, despite counsel's previous assertions about his lack of intent, supports the idea that he overcame any reluctance and was satisfied of his own guilt of the charged offenses.

The purpose of Rule 11(b)(3) is "to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (internal quotation omitted). But Taylor is not such a defendant. He did not hastily plead guilty to these charges without any time for reflection or consideration. Instead, his plea was continued twice to allow for further

discussion with his attorney.  Referencing the failed plea attempts and the purported insufficient factual basis for the carjacking offenses, the district court confirmed with Taylor and his counsel that they wanted to proceed with the third plea hearing.  His desire to persist with his plea, like his admission about brandishing the weapon, suggests that his plea was knowing, intelligent, and voluntary.  Thus, viewing the record as a whole, there is sufficient evidence to find that Taylor intended to kill or seriously harm his victims at the time of the offenses.

## III.

For the foregoing reasons, we affirm the Defendant's convictions.