NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0288n.06

Case No. 21-3599

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 19, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| TREVOR RODRIGUES, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; BATCHELDER and DONALD, Circuit Judges.

SUTTON, Chief Judge. Trevor Rodrigues claims that the district court improperly accepted his guilty plea. Because Rodrigues entered a knowing and voluntary plea and did not show obvious difficulties in understanding the proceedings without an interpreter and because he did not raise these points below and cannot meet the requirements of plain-error review, we affirm.

Born and raised in Brazil, Trevor Rodrigues grew up speaking Portuguese. He attained a high school education, still speaks primarily Portuguese, and learned to speak some Spanish and English.

In 2016, Rodrigues arranged the flight logistics for transporting 706 kilograms of cocaine from Colombia to the Bahamas to the United States. But law enforcement agents intercepted a phone call between him and a co-conspirator. A federal grand jury indicted Rodrigues in absentia for one count of conspiracy to import more than five kilograms of cocaine in 2018. 21 U.S.C.

§§ 959(a), 963. Rodrigues was arrested in Colombia in 2019 and extradited to the United States in 2020.

At his arraignment, Rodrigues answered all of the magistrate judge's questions in English and accepted appointed counsel. Rodrigues stated under oath that he could speak and understand spoken English. When it came to reading and writing English, Rodrigues said that he "probably" "cannot write it" but that he can "read it a little." R.36 at 10–11. He confirmed that his modest reading ability combined with assistance from his attorney enabled him to understand his written financial affidavit. He pleaded "not guilty." *Id.* at 12.

Almost a year later, Rodrigues changed his mind and decided to plead guilty. At the change-of-plea hearing, the court explained that, if Rodrigues did not understand the court's questions, the court would "be happy to explain it to [him] further," and made sure that he understood what had happened so far. R.35 at 2–3. Rodrigues took up the offer and said, "I don't understand what's conspiracy, sir, or why I'm for conspiracy." *Id.* at 3. The district court explained the concept, and Rodrigues affirmed that he understood it.

In the midst of the Rule 11 plea colloquy, the court stopped the proceeding and asked Rodrigues if he "understand[s] English very well." *Id.* at 5. Rodrigues responded that he did, after which the court said, "Okay because I'm sensing that you're not understanding some of my questions. I'm concerned about that. You let me know when you don't understand something." *Id.*

Returning to the plea colloquy, the court asked Rodrigues if he understood that he had a right "to plead not guilty and hold that plea throughout this entire case." *Id.* at 6. Rodrigues asked for clarification: "What do you mean, 'throughout [the] entire case'"? *Id.* The district court explained, and Rodrigues said that he understood the concept. After that, Rodrigues confirmed

that he understood that by entering the plea agreement he would surrender his rights to a jury trial, to confront witnesses, to testify, and to present other evidence on his own behalf. Then they went over the plea agreement, during which the court reminded Rodrigues that he could ask any questions he wanted. When the district court turned to the charge, Rodrigues asked the court to "go over it again." *Id*. at 8. After the court did so, Rodrigues confirmed that he understood the charge and the range of possible punishments. His lawyer confirmed that he and Rodrigues had reviewed the agreement and that Rodrigues understood it.

The prosecutor recounted the factual basis for the charge. Rodrigues at first said he did not "totally agree." *Id.* at 20. The court responded that it could not "go forward" then. *Id.* at 21. After that, Rodrigues said, "Sir, I agree that the government—what he say just now, I agree." *Id.* "Okay," the court replied, "I just want to make sure before we move on. All right." *Id.*

The court turned to the "bottom line." *Id.* at 25. One last time the court asked, "do you have any questions of either myself or [your attorney that] we can help you with, something which you did not understand or which needs to be clarified?" Rodrigues answered, "[n]o, sir. I understand, sir." *Id.* at 23–24. Rodrigues's lawyer confirmed that Rodrigues entered the agreement knowingly and voluntarily. The court asked Rodrigues, "how do you plead?" *Id.* at 25. Rodrigues responded that he did not understand. "Guilty or not guilty," his lawyer explained. *Id.* "Oh. Guilty, sir," Rodrigues answered. *Id.* The court accepted the plea. A sentencing proceeding followed. The court imposed a prison term of 120 months.

On appeal, Rodrigues challenges the validity of his guilty plea on two grounds: (1) that it violated his due process rights given his modest facility with English, and (2) that a federal statute required the district court to make a determination on its own initiative about whether to appoint an interpreter.

3

*Due process*. Under the Fifth Amendment, any waiver of "constitutional rights" in a criminal proceeding "not only must be voluntary," but it also "must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The questions and answers required by Criminal Rule 11 customarily satisfy these imperatives. When properly done, a plea colloquy permits the court to confirm "that the defendant is pleading voluntarily and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quotation omitted).

Because Rodrigues did not object to the plea process below, the stringencies of plain-error review apply to his appeal. *United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021); *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). They demand that he show (1) an error, (2) that was "obvious or clear," and (3) that "affected [his] substantial rights." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation omitted). In this setting, an error affects substantial rights only where defendants show a reasonable probability that they would not have pleaded guilty. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *see Hobbs*, 953 F.3d at 857.

Rodrigues has not met these requirements for undoing the plea agreement. The district court carefully adhered to Rule 11's requirements. And the transcript reveals that Rodrigues understood the meaning of his plea. Rodrigues testified more than once that he could understand spoken English on his own and also said that he could understand written English with help from his attorney. The district court stopped the proceeding several times to ensure Rodrigues understood what was happening. Rodrigues took up the court's offers for further explanation more

4

than once, and the court refused to move forward until Rodrigues confirmed that he understood each point. His attorney confirmed that Rodrigues entered the agreement voluntarily and knowingly.

To this day, moreover, Rodrigues does not claim he would make a different plea decision had he known something then that he knows now. With or without the hurdles of plain-error review, that reality suffices by itself to defeat this argument. *Dominguez Benitez*, 542 U.S. at 81.

Pushing back, Rodrigues calls our attention to parts of the transcript where Rodrigues needed to have terminology explained, rephrased, or repeated by the court. But these moments, most of them initiated by the court, strengthen our conviction that no due process violation occurred. Each time, the court paused until Rodrigues understood what was at stake.

Rodrigues emphasizes the moment when he said he did not "totally agree" with the factual basis of the charge. But after this initial hesitation, Rodrigues did not hesitate to accept the full agreement and the facts underlying it. *See United States v. Page*, 520 F.3d 545, 547–58 (6th Cir. 2008) (holding that a "less than clear" exchange about the charges did not render a plea involuntary when a "review of the entire record" showed understanding); *United States v. Taylor*, 627 F.3d 1012, 1019–20 (6th Cir. 2010) (upholding a plea agreement where the defendant had twice chosen not to admit to the factual basis before agreeing with it). An initial equivocation does not end the inquiry or for that matter freeze it in time. After clarification and further consideration, Rodrigues pleaded guilty and did so by all accounts knowingly and voluntarily.

Rodrigues adds that he thought that he would not serve jail time, only deportation, after his guilty plea. But the plea agreement clearly says that his sentence "must include some period of imprisonment." R.24 at 2.

5

*The Court Interpreters Act.* Rodrigues separately argues that the Court Interpreters Act required the district court to make a finding on the record about whether he needed an interpreter. The Act says that courts "shall" appoint an interpreter on their own or at the motion of a party when a party "speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings." 28 U.S.C. § 1827(d)(1). Because Rodrigues did not raise the issue below, we review it for plain error as well.

No plain error occurred. Rodrigues admits that no Sixth Circuit case provides that the district court needed to make this specific finding. That by itself is fatal under this trying standard.

On top of that, Rodrigues's testimony about his English ability, his attorney's agreement that Rodrigues fully understood the proceedings, and the questions by the judge and answers by Rodrigues all show that no obvious error occurred. *See United States v. Mendoza*, 82 F.3d 419, at *2 (6th Cir. 1996) (unpublished table decision) (finding no error in not using interpreter when defendant did not ask for one and "testified in English at his sentencing hearing, which indicates that he spoke sufficient English to understand the nature of the proceedings"); *United States v. Rodriguez*, 211 F. App'x 467, 468–71 (6th Cir. 2006) (per curiam) (finding no violation when the district court asked if the defendant had understood everything so far, confirmed this with his lawyer, and did not assess further whether to appoint an interpreter).

*United States v. Markarian* confirms that this road does not take Rodrigues very far. In that case, a witness testified against a criminal defendant, and none of the parties argued at the time that an interpreter was needed. 967 F.2d 1098, 1100–01 (6th Cir. 1992). Like Rodrigues, the defendant argued on appeal that the Court Interpreters Act "places a duty on the trial court to inquire about the need for an interpreter when a defendant or witness has difficulty with English." *Id.* at 1104. Applying plain-error review, we held that, because the judge "indicated that he pays

special attention to this question" and the record revealed no obvious error, no violation of the statute or abuse of the court's "wide discretion" occurred. *Id.* What we said there applies here. It was not plain error for a district court that showed considerable sensitivity to any language barriers and oversaw a careful plea colloquy to decline to inquire further about the need for an interpreter.

Rodrigues insists that *Markarian* addressed a secondary issue—how the district court used its discretion in deciding whether to appoint an interpreter—not the prior question of whether a district court must make a finding that the defendant does not need an interpreter. But that is not what *Markarian* says. It notes that the defendant argued that the Act required the district court "to inquire about the need for an interpreter when a defendant or witness has difficulty with English" and sought relief on that ground. *Id.*

Rodrigues claims that most circuits require this initial factfinding. But he overreads the cases. Take the Fifth, Ninth, Tenth, and Eleventh Circuit cases. Those courts, it is true, have said that district courts have a "mandatory duty" to make a determination on the record whether an interpreter is required once the Act is triggered by the court's awareness of a defendant's "difficulty with English." *Valladares v. United States*, 871 F.2d 1564, 1565 (11th Cir. 1989); *see, e.g., United States v. Murguia-Rodriguez*, 815 F.3d 566, 570 (9th Cir. 2016).

But these circuits do not see a problem when a trial court does not make an express finding in circumstances like these. Even when a defendant, for example, said she would be more comfortable using her native language and seemed to misinterpret a few questions, the difficulties did not trigger this duty. *United States v. Black*, 369 F.3d 1171, 1174–76 (10th Cir. 2004); *see also United States v. Edouard*, 485 F.3d 1324, 1339–40 (11th Cir. 2007) (holding that when a defendant needs a question to be rephrased, that alone does not create a duty to inquire); *United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990); *United States v. Rahman*, 647 F. App'x 955,

956 (11th Cir. 2016) (per curiam); *United States v. Lieng*, 548 F. App'x 397, 398 (9th Cir. 2013).

No plain error occurred.

We affirm.