**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0468n.06

**No. 12-3767**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>May 09, 2013<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DAVID L. THURMAN, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

**Before:  MARTIN, SUHRHEINRICH, and COLE, Circuit Judges**.

**BOYCE F. MARTIN, Jr., Circuit Judge.**  David Thurman moved to suppress a gun that

police found in his locked glove box during a traffic stop.  The district court denied the motion and

Thurman now appeals.  Thurman further argues that the district court's application of the Armed

Career Criminal Act at sentencing was manifestly unfair.  For the reasons that follow, we **AFFIRM**

the district court.

I.

At 3:30 a.m. on August 15, 2010, David Thurman was driving down the highway near

Fairlawn, Ohio, having just finished working as a bouncer at The Executive Den, an adult

entertainment club in Cleveland, Ohio.  Police Officer Hendrickson from the Fairlawn Police

Department saw Thurman's car speeding on the highway without either a functioning headlight or

an illuminated license plate and stopped the car.  Hendrickson asked Thurman for his driver's license

and, when he returned to his police car with the license, he heard over the police radio about a robbery that had taken place at a hotel nearby. The description of the robber was a "male wearing black clothing, with a ski type mask, and sneakers, who had emptied the cash box of the hotel and fled the scene." Hendrickson responded to the broadcast saying that the person he had stopped matched that description and several police vehicles arrived to support him.

Hendrickson and another officer, Patrolman Honaker, then approached Thurman's vehicle. Honaker testified that he asked Thurman for consent to search his car and that Thurman gave consent, got out of the car, and was frisked. The officers removed a wad of cash from his back pocket and sat Thurman down, without handcuffing him, on the guardrail. At this point no guns were drawn and there were about three police vehicles at the scene. Meanwhile, Honaker searched the car and found two bags of marijuana in the center console of the SUV. When asked, Thurman said that he had taken them from a patron at the bar and had been planning on turning them in to the police.

Honaker mentioned to Thurman that the glove box of the SUV was locked. According to Honaker, he asked Thurman if he could look inside the glove box. Thurman did not respond verbally, but he handed Honaker the keys. The officers' guns were not drawn at the time, but Thurman testified that there were about nine police cars on the scene. At this point, Thurman had not been given any *Miranda* warnings. The officers agree both that Thurman was not free to leave and that he was being held at least on investigative detention. When Honaker opened the glove box he found a Taurus PT1911, .45 caliber pistol firearm.

Thurman was charged by superseding indictment with two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The first count arose from the August 15 traffic stop and is the only count relevant here. Thurman moved to suppress the firearm discovered during the search of his vehicle. The district court held an evidentiary hearing on the motion to suppress, at which Thurman testified that the officers initially never asked to search the car and further that the officers removed the keys from his pocket. The officers testified that Thurman verbally consented to the first search and that he voluntarily handed over the keys when asked about the glove box.

The district court ultimately denied Thurman's motion to suppress, determining that Thurman consented to the initial search of the car and the subsequent search of the glove box when he handed over his keys. The district court further concluded that whether there was a consensual search came down to credibility and he "credit[ed] the testimony of the officers."

A jury convicted Thurman on Count One of the indictment. At sentencing, the district court concluded that Thurman was an armed career criminal and applied the Armed Career Criminal Act, which has a mandatory minimum of 180 months' incarceration. The district court looked to the maximum sentences at the time of Thurman's past convictions and determined that these convictions counted towards the three prior convictions needed to qualify as an armed career criminal. The district court determined that Thurman's adjusted offense level was 34 with a criminal history category of V. This yielded an advisory guidelines range of 235 to 293 months. After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Thurman to 180 months incarceration, followed by five years of supervised release, and a $100 special assessment.

Thurman appeals the district court's denial of his motion to suppress and the district court's application of the Armed Career Criminal Act. Both parties agree that there was probable cause for the initial stop of Thurman's car and, for the purposes of this appeal, Thurman agrees to credit the officer testimony that Thurman silently handed the keys to Honaker.

II.

Thurman claims there was no valid consent to search his glove box and puts forth two arguments: first, consent was not valid because he had not received *Miranda* warnings when the police officers asked to search; and second, he did not verbally consent to the search of the car.

When reviewing a district court's denial of a motion to suppress we review "findings of fact for clear error, and legal conclusions *de novo*." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998). Whether a consent to search is voluntary is a question of fact. *United States v. Collins*, 683 F.3d 697, 701–02 (6th Cir. 2012) (citing *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995)) (quotations omitted). A district court's voluntariness findings "will not be reversed unless clearly erroneous." *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988).

Thurman argues that he was "'seized' for the purposes of *Miranda*, and the failure to provide *Miranda* warnings prior to the alleged consent causes the consent to be involuntary." The argument, without more, fails, because the "fact of custody alone has never been enough in itself to demonstrate a . . . consent to search." *United States v. Watson*, 423 U.S. 411, 424 (1976); *United States v. Salvo*, 133 F.3d 943, 953–54 (6th Cir. 1998) (noting that even if the defendant was under custodial interrogation and should have received *Miranda* warnings, "that by itself would not be enough to

- 4 -

vitiate an otherwise valid consent to search"). Instead we must look to the circumstances surrounding the traffic stop and search.

We determine whether consent was voluntary by looking at the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The government has the burden of proving that a consent to search was voluntary. *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998). The Court should consider "the age, intelligence, and education of the individual, whether the individual understands the right to refuse to consent; . . . the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (citation omitted).

While knowledge of the right to refuse to consent to a search is relevant, "police do not have to inform an individual of his right to refuse to consent to a search." *Collins*, 683 F.3d at 702 (citing *United States v. Beauchamp*, 659 F.3d 560, 572 (6th Cir. 2011)). Whether there was a "lengthy detention and interrogation," and whether officers had weapons drawn may be evidence of duress or coercion. *Worley,* 193 F.3d at 386 (holding consent was voluntary because the detention was not lengthy, the officers wore plain clothes and had no weapons visible). Furthermore, this Court and the Tenth Circuit have "held that non-verbal actions, considered with other factors, can constitute voluntary consent to searches . . . ." *United States v. Taylor*, 142 F.3d 438 (6th Cir. 1998) (holding there was voluntary consent when the defendant got out of the car and silently opened the trunk in response to a request to search the trunk) (unpublished); *United States v. Williams*, 754 F.2d 672, 675 (6th Cir. 1985) (holding defendant's response of "no problem" combined with his attempt to unlock a suitcase's combination lock constituted voluntary consent); *United States v. Anderson*, 983

- 5 -

F.2d 1069 (6th Cir. 1993) (holding that the "defendant's action of opening a piece of luggage in view of the agents and then providing [an agent] with the combination to the second suitcase" indicated nonverbal consent) (unpublished); *see also United States v. Benitez*, 899 F.2d 995, 998 (10th Cir. 1990) (holding consent was voluntary where defendant opened the trunk of his car after a request to search).

We do not believe the district court committed clear error when it determined that Thurman had voluntarily consented to the search of his glove box. There is no evidence of overt duress or coercion: Thurman was sitting on the guardrail without handcuffs when Honaker asked for consent, Honaker and Hendrickson did not have their guns drawn, the officers spoke to Thurman in a conversational tone, and Thurman seemed calm and cooperative. When Honaker asked Thurman if he could search the glove box, Thurman reached into his pocket and handed his keys to the officers. Considering the totality of the circumstances, including Thurman's prior verbal consent to search the car, Thurman's handing over of the keys constituted a voluntary consent to search the glove box.

## III.

Thurman argues that the district court erred in applying the Armed Career Criminal Act at sentencing and that such application was manifestly unfair. We review a district court's sentencing decisions de novo, but the standard of review is clear error "where the inquiry turns upon whether the defendant's prior convictions are distinct criminal episodes that should be counted separately under statutory provisions." *United States v. Martin*, 526 F.3d 926, 938 (6th Cir. 2008) (citing *United States v. Powell*, 404 F.3d 678, 682 (2d Cir. 2005)).

If convicted of being a felon-in-possession of a firearm, a defendant will generally receive a sentence of up to ten years' incarceration. 18 U.S.C. § 922(g). But the sentence may be enhanced to a mandatory minimum of fifteen years if the defendant is found to qualify as an armed career criminal under the Armed Career Criminal Act. 18 U.S.C. § 924(e)(1). To apply the Act, a defendant who is convicted under 18 U.S.C. § 922(g) must have had three previous convictions "for a violent felony or a serious drug offense" that were "committed on occasions different from one another." *Id.* A "serious drug offense" is one which carries a "maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A).

Thurman had two convictions that counted as violent felonies for purposes of the Act. In addition, Thurman was convicted of two separate drug trafficking offenses in 1990 and 1991. At the time he was sentenced for those drug offenses, the maximum sentences were ten years. However, in 1996, Ohio reduced the maximum sentence that could be imposed from ten years to between five and eight years. Until recently, this Circuit had held that, for the purposes of applying the Armed Career Criminal Act, it would consider the current sentencing maximum for a defendant's past felonies and drug offenses. *United States v. Morton*, 17 F.3d 911, 915 (6th Cir. 1994). However, as Thurman himself acknowledges, *McNeill v. United States* overruled this precedent in 2011. *McNeill v. United States*, 131 S. Ct. 2218, 2222 (2011). In *McNeill* the Supreme Court held that "a federal sentencing court must determine whether 'an offense under State law' is a 'serious drug offense' by consulting the 'maximum term of imprisonment' applicable to a defendant's previous drug offense at the time of the defendant's state conviction for that offense." *Id.* at 2224.

Thurman's argument is merely that "the harsh effect of the *McNeill* decision should not apply to his case, given the timing and unique circumstances and litigation involved in his case." We hold that *McNeill* controls here. The district court relied on *McNeill* in determining that the Armed Career Criminal Act applied. At the time that Thurman was convicted of the two drug trafficking offenses, in 1990 and 1991, the maximum sentence was ten years. O.R.C. § 2925.03. The district court did not err when it applied the Armed Career Criminal Act to Thurman's sentence.

IV.

We affirm the district court's judgment.